JUL 17 2025 am10:12
FILED - USDC - FLMD - ORL

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 6:25-cr- 204- CEM- DCI
18 U.S.C. § 1349
18 U.S.C. § 1343

ZACHARY SOMERS HISCOCK
TIMOTHY SLATER
NIKHIL PATEL
GANGADHAR BATHULA
ARIF HASAN SAYED

## INDICTMENT

The Grand Jury charges:

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)

### A. Introduction

At times material to this Indictment:

1.    The 2008 Post-9/11 Veterans Educational Assistance Act ("Post-9/11 GI Bill") provided various tuition benefits for military veterans who served on or after September 11, 2001. In 2011, Post-9/11 GI Bill tuition benefits were extended beyond traditional undergraduate and graduate degree programs to include non-accredited and non-college degree ("NCD") programs that are typically for-profit institutions.

2.    The United States Department of Veterans Affairs ("VA") paid tuition and fees for individuals receiving Post-9/11 GI Bill tuition benefits directly to

education providers on the beneficiary's behalf, up to a certain annual cap. The annual cap per veteran during the relevant time frame was:

| Time period | Net Tuition and Mandatory Fees |
|---|---|
| Academic Year 2019 (8/1/2019 to 7/31/2020) | $24,476.79 |
| Academic Year 2020 (8/1/2020 to 7/31/2021) | $25,162.14 |
| Academic Year 2021 (8/1/2021 to 7/31/2022) | $26,042.81 |
| Academic Year 2022 (8/1/2022 to 7/31/2023) | $26,381.37 |

Once a veteran used three years of the veteran's tuition benefits, the veteran was no longer eligible for Post-9/11 GI Bill tuition benefits.

3.      As part of the Post-9/11 GI Bill, each state was required to designate a "State Approving Agency" ("SAA") to review and approve institutions and programs to receive Post-9/11 GI Bill tuition benefits. Each program or institution was required to designate one or more School Certifying Officials ("SCOs") to certify beneficiaries of Post-9/11 GI Bill tuition benefits.

4.      If the VA determined that an institution violated the rules for funding, it could "suspend" a program while an investigation was conducted or "withdraw" an institution and disqualify it from receiving Post-9/11 GI Bill tuition benefits.

5.      Programs that provided "any commission, bonus, or other incentive payment based on success in securing enrollments or financial aid to any persons or entities engaged in any student recruiting or admission activities or in making decisions regarding the award of student financial assistance" were prohibited from

2

receiving Post-9/11 GI Bill tuition benefits. 38 U.S.C. § 3696(d).[1] Programs where

veterans comprised more than 85% of the enrolled student body were forbidden from

receiving Post-9/11 GI Bill tuition benefits (the "85/15 rule"). 38 CFR § 21.4201.

The purpose of these regulations was to prevent institutions from engaging in

predatory enrollment and recruitment practices targeting veterans for their tuition

benefits.

      6.    NCD programs and other institutions that received Post-9/11 GI Bill

tuition benefits were periodically audited by SAAs for compliance with federal

regulations and requirements. As part of the compliance process, the SCO and other

NCD representatives were required to regularly certify to the VA that they were in

compliance with various federal regulations and requirements, including the

requirement not to engage in commission-based veteran recruitment. As part of the

compliance process, the SCO and NCD representatives were required to truthfully

respond to VA inquiries and disclose requested information to the VA.

      7.    The VA Online Certification of Enrollment ("VA-ONCE") system was

an online system that allowed NCDs to verify enrolled veteran students and hours of

study, causing the system to automatically dispense VA tuition benefits to the

identified bank account of the NCD via wire transfers.

---

[1]    The language quoted above was in effect through July 31, 2021, and codified at 38 U.S.C. § 3696(d). As of August 1, 2021, the language quoted above was recodified at 38 U.S.C. § 3696(c). As of December 20, 2021, the language quoted above was recodified at 38 U.S.C. § 3696(c)(1), with an exception related to foreign students not related to the charge herein.

8.     Established Investments, Inc., d/b/a "Lead Speed," d/b/a "Veteran Transition Mission," was a corporation organized under the laws of the State of Florida and based in Apopka, Florida.

9.     Kyle Blake Kotecha was the CEO and President of Established Investments. Beginning in or about January 2022, Kotecha established The Reskill Network, Inc. ("Reskill") and conducted his business under this new corporate entity.

10.    KHAP Inc. d/b/a New Horizons Computer Learning Center of Phoenix ("New Horizons Phoenix") was an NCD program operating in Phoenix, Arizona. New Horizons Phoenix was originally approved to receive Post-9/11 GI Bill tuition benefits on or about March 1, 2012, and was periodically reapproved until approval was withdrawn on or about December 10, 2021.

11.    ZACHARY SOMERS HISCOCK was the President of New Horizons Phoenix. HISCOCK served as the SCO for New Horizons Phoenix.

12.    Information Solutions Design Incorporated d/b/a New Horizons Computer Learning Center of St. Louis ("New Horizons St. Louis") was an NCD program operating in St. Louis, Missouri. New Horizons St. Louis was originally approved to receive Post-9/11 GI Bill tuition benefits on or about April 1, 2013, and was periodically reapproved until approval was withdrawn on or about October 4, 2021.

13.    Information Solutions Design Incorporated also operated an NCD program in Fairview Heights, Illinois doing business under the name New Horizons

Computer Learning Center ("New Horizons Illinois"). New Horizons Illinois was originally approved to receive Post-9/11 GI Bill tuition benefits on or about June 1, 2015, and was periodically reapproved thereafter. In November 2021, Information Solutions Design Incorporated was dissolved and NIKHIL PATEL and TIMOTHY SLATER sought to transfer its authorization for Post-9/11 GI Bill tuition benefits to a new corporate entity, Workforce and Technology Training LLC ("Workforce Training Illinois").

14.     TIMOTHY SLATER was the President and owner of Information Solutions Design Incorporated and Workforce Training Illinois.

15.     NIKHIL PATEL was the General Manager and SCO of Information Solutions Design Incorporated and Workforce Training Illinois.

16.     Ganga Enviro Systems, Inc. d/b/a Global Institute of Technology Services d/b/a GIT Services ("Global Institute of Technology Services") was an NCD program operating in Richmond, Virginia. Global Institute of Technology Services was originally approved to receive Post-9/11 GI Bill tuition benefits on or about August 24, 2015, and was periodically reapproved until approval was withdrawn on or about April 30, 2022.

17.     GANGADHAR BATHULA was the Program Director and SCO for Global Institute of Technology Services.

18.     ABCO Technology, Inc. ("ABCO Technology") was an NCD program operating in Los Angeles, California. ABCO Technology was originally approved to

5

receive Post-9/11 GI Bill tuition benefits on or about December 1, 2012, and was periodically reapproved for funding thereafter.

19.    ARIF HASAN SAYED was the CEO of ABCO Technology.

20.    HISCOCK, SLATER, PATEL, BATHULA, and SAYED, and the entities they represent, are referred to collectively as the "NCD Defendants."

## B. The Conspiracy

21.    Beginning on or about June 4, 2019, and continuing thereafter through on or about January 19, 2023, in the Middle District of Florida, and elsewhere, the defendants,

ZACHARY SOMERS HISCOCK,
TIMOTHY SLATER,
NIKHIL PATEL,
GANGADHAR BATHULA,
and
ARIF HASSAN SAYED

did knowingly and willfully combine, conspire, confederate and agree with each other, Kyle Blake Kotecha, and other persons, both known and unknown to the Grand Jury, to commit wire fraud; that is, to knowingly, and with intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

6

## C. <u>Manner and Means of the Conspiracy</u>

22.    The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, among others:

23.    It was part of the conspiracy that the NCD Defendants would and did represent and certify to the VA and SAAs that their schools would not engage in commission-based and incentive-based recruiting and would comply with other VA rules to qualify for Post-9/11 GI Bill tuition benefits.

24.    It was further part of the conspiracy that each of the NCD Defendants knew that the NCD at which he worked had signed a Memorandum of Understanding ("MOU") with the VA to utilize the VA-ONCE system. The NCD Defendants knew that, by using the VA-ONCE system to seek and obtain VA benefits, the NCDs were certifying that they were complying with all applicable VA laws and regulations.

25.    It was further part of the conspiracy that, prior to June 4, 2019, various NCD Defendants retained Kotecha to engage in online advertising targeting veterans to increase veteran enrollments at the NCDs.

26.    It was further part of the conspiracy that, starting on or about June 4, 2019, various NCD Defendants engaged Kotecha to conduct prohibited commission-based and incentive-based recruiting to increase veteran enrollments at the NCDs. The NCD Defendants and Kotecha undertook various efforts to conceal and obfuscate the nature of Kotecha's recruitment through coded terms, falsified

7

contracts, concealed payments, and other efforts to hinder any disclosure of the commission-based recruiting in periodic audits by SAAs.

27.    It was further part of the conspiracy that NCD Defendants structured their relationship with Kotecha so that NCD Defendants could falsely claim in such audits to be ignorant of or confused about the permissibility of the commission-based recruitment in which they were engaged.

28.    It was further part of the conspiracy that the NCD Defendants, through their NCD programs, provided courses in cyber security and computer coding that were between 8 to 13 weeks in duration. The NCDs charged the VA approximately $15,000-$23,000 per veteran student. After the veterans attended these courses, only a small fraction of the veteran students went on to seek or obtain any certifications in cyber security or the computer coding languages purportedly taught.

## I.    Kotecha, HISCOCK, and New Horizons Phoenix

29.    It was further part of the conspiracy that, on or about February 5, 2019, HISCOCK, on behalf of New Horizons Phoenix, retained Established Investments, Inc. and Kotecha to engage in online advertising targeting veterans.

30.    It was further part of the conspiracy that, on or about June 4, 2019, HISCOCK proposed that he pay Kotecha a commission or share of tuition revenue to engage in prohibited commission-based recruiting of veterans. HISCOCK told Kotecha that he would pay Kotecha a commission for each recruited veteran student.

31.     It was further part of the conspiracy that, from on or about June 4, 2019, through on or about July 18, 2019, HISCOCK and Kotecha engaged in a series of discussions and negotiations regarding the terms for Kotecha's services and how to memorialize those terms in a written contract. HISCOCK and Kotecha agreed that Kotecha would recruit veterans and would be paid a commission for each student enrolled at New Horizons Phoenix. HISCOCK informed Kotecha that the commission paid to Kotecha could not be referred to as commission, because such an arrangement was prohibited by VA rules.

32.     It was further part of the conspiracy that HISCOCK and Kotecha determined that they would refer to these prohibited recruitment commissions by using the term "Premium Lead."

33.     It was further part of the conspiracy that, over the course of their dealings, HISCOCK and Kotecha conferred about different ways to memorialize their business arrangement in a way that would not reveal the nature of Kotecha's prohibited commission-based recruiting. Despite the lack of a documented contract, HISCOCK regularly paid Kotecha a percentage of the VA tuition benefits that he received for veteran students who were enrolled at New Horizons Phoenix as a result of Kotecha's recruiting.

34.     It was further part of the conspiracy that, over the course of their dealings, HISCOCK and Kotecha discussed different ways to document invoices so that they would not reveal the nature of Kotecha's prohibited commission-based recruiting. Starting in July 2019, Kotecha issued invoices to New Horizons Phoenix

9

identifying each recruited veteran by name as a "Premium Lead." In or about September 2019, Kotecha revised his invoices so that he would refer to the number of "Premium Leads" without referring to them by name. In or about January 2020, HISCOCK and Kotecha exchanged emails about how to obscure the nature of Kotecha's commission-based recruiting on invoices. Starting in or about January 2020, Kotecha invoiced for a total number of "Premium Leads" without specifying the courses or veteran students being recruited.

35.    It was further part of the conspiracy that, after HISCOCK engaged Kotecha to engage in prohibited commission-based recruiting in 2019, New Horizons Phoenix dramatically increased the number of veterans enrolled and the VA benefits that New Horizons Phoenix received:

| Year | Total Enrolled Veterans | Total VA Benefits Received |
|---|---|---|
| 2018 | 13 | $64,226.00 |
| 2019 | 58 | $881,641.94 |
| 2020 | 149 | $2,627,117.54 |
| 2021 | 143 | $2,280,224.35 |

Enrollments of veteran students in New Horizons Phoenix sharply rose in July 2019, when Kotecha started to engage in prohibited commission-based recruiting:

| Year | Total Enrolled Veterans | Total VA Benefits Received |
|---|---|---|
| 1/1/2019 to 6/30/2019 | 13 | $150,750.94 |
| 7/1/2019 to 12/31/2019 | 45 | $730,891.00 |

36.    It was further part of the conspiracy that payments of tuition benefits from the VA to New Horizons Phoenix were made through interstate wire transfers.

New Horizons Phoenix then regularly would utilize interstate wire transfers to make payments for Kotecha's services.

37.     It was further part of the conspiracy that, to maintain New Horizons Phoenix's eligibility to receive Post-9/11 GI Bill tuition benefits, HISCOCK falsely certified to the Arizona SAA that New Horizons Phoenix was not engaged in commission-based recruiting of veterans.

38.     In August 2021, the Arizona SAA received Information about New Horizons Phoenix engaging in commission-based recruiting and suspended the program from receiving VA benefits. It was further part of the conspiracy that, during the ensuing investigation, HISCOCK falsely described the nature of his arrangement with Kotecha to the Arizona SAA.

39.     On or about December 11, 2021, the Arizona SAA withdrew New Horizons Phoenix from the program, disqualifying it from receiving Post-9/11 GI Bill tuition benefits.

## II.    Kotecha, SLATER, PATEL, New Horizons St. Louis, New Horizons Illinois, and Workforce Training Illinois.

40.     It was further part of the conspiracy that, on or about October 10, 2019, SLATER, on behalf of New Horizons St. Louis, retained Established Investments, Inc. and Kotecha to engage in online advertising targeting veterans.

41.     It was further part of the conspiracy that, in or about late November 2019, SLATER and Kotecha began to discuss an arrangement to engage in prohibited commission-based recruiting for New Horizons St. Louis. In or about

December 2019, SLATER introduced Kotecha to PATEL to facilitate Kotecha and others determining if potential recruits were eligible for Post-9/11 GI Bill tuition benefits.

42.     It was further part of the conspiracy that, beginning on or about December 17, 2019, Kotecha and SLATER engaged in a series of conversations that contemplated Kotecha engaging in prohibited commission-based recruiting of veterans for New Horizons St. Louis in exchange for approximately 25% of the resulting tuition benefits that New Horizons St. Louis would receive.

43.     It was further part of the conspiracy that, on or about January 3, 2020, Kotecha provided a contract memorializing their agreement. In the contract, Kotecha, through Established Investments Inc., agreed to provide "Premium Leads" to New Horizons St. Louis in exchange for a payment per student per week of instruction. Kotecha referred to this as their "handshake" agreement.

44.     It was further part of the conspiracy that, starting in January 2020, New Horizons St. Louis significantly increased its veteran enrollments and benefits.

| Year | Total Enrolled Veterans | Total VA Benefits Received |
|------|------|------|
| 2018 | 0 | $0 |
| 2019 | 4 | $38,616.68 |
| 2020 | 95 | $1,971,698.24 |
| 2021 | 104 | $2,205,239.22 |

45.     It was further part of the conspiracy that payments of tuition benefits from the VA to New Horizons St. Louis were made through interstate wire transfers.

New Horizons St. Louis then would regularly utilize interstate wire transfers to make payments for Kotecha's services.

46.     It was further part of the conspiracy that, starting on or about February 17, 2020, Kotecha, through Established Investments Inc., invoiced New Horizons St. Louis for "Premium Residential Leads" or "Premium Leads" for each of the veterans recruited and enrolled into New Horizons St. Louis.

47.     It was further part of the conspiracy that, on or about February 19, 2020, PATEL as SCO of New Horizons Illinois falsely certified to the Illinois SAA that New Horizons Illinois was not engaged in commission-based recruitment.

48.     Because New Horizons St. Louis saw a large jump in veteran enrollment, it was required to have non-veteran paying students enrolled in the instructional programs to comply with the 85/15 rule. It was further part of the conspiracy that, to enable New Horizons St. Louis to enroll more veteran students and obtain more Post-9/11 GI Bill tuition benefits, PATEL and SLATER falsified documentation of enrollments to show fake non-veteran students in New Horizons St. Louis classes. PATEL and SLATER created these fake non-veteran students to mislead the VA and its representatives into believing that the required minimum of 15% of New Horizons St. Louis classes were attended by non-veteran paying students.

49.     It was further part of the conspiracy that, in or about February 2021, Kotecha was notified about a government investigation of an NCD in Orlando

where he previously worked that had, among other things, engaged in prohibited commission-based recruitment practices.

50.    It was further part of the conspiracy that, starting in or about February 2021, Kotecha and SLATER created fraudulent contracts designed to evade government scrutiny during any future review. These fraudulent contracts were backdated and falsely suggested that Kotecha was paid a retainer. The fraudulent contracts did not affect the actual business arrangement of the parties.

51.    It was further part of the conspiracy that, starting in or about April 2021, SLATER and PATEL started routing veterans recruited through Kotecha to New Horizons Illinois where a similar increase in veteran enrollments occurred. The increase in veteran enrollments continued when they changed corporate entities to Workforce Training Illinois.

| Year | Total Enrolled Veterans | Total VA Benefits Received |
|------|------------------------|----------------------------|
| 2020 | 0 | $0 |
| 2021 | 101 | $1,745,589.38 |
| 2022 | 107 | $2,291,173.33 |
| 2023 | 17 | $380,252.00 |

52.    On or about August 17, 2021, the Missouri SAA contacted PATEL regarding concerns about New Horizons St. Louis's recruiting practices. It was further part of the conspiracy that, over the course of the Missouri SAA's ensuing investigation, SLATER and PATEL provided to the VA fraudulent backdated contracts purporting to put Kotecha on retainer, false invoices, and took other

actions to falsely distance the NCD from Kotecha's prohibited commission-based veteran recruitment.

53.     On or about October 4, 2021, the Missouri SAA withdrew New Horizons St. Louis from the Post-9/11 GI Bill program, disqualifying it from receiving Post-9/11 GI Bill tuition benefits.

54.     It was further part of the conspiracy that, in response to the withdrawal of New Horizons St. Louis, SLATER, PATEL, and Kotecha conferred about how to continue Kotecha's prohibited commission-based veteran recruitment through their operation in Illinois.

55.     It was further part of the conspiracy that, on or about November 16, 2021, PATEL and SLATER dissolved Information Solutions Design Incorporated and conducted its operations under a new corporate entity, Workforce and Technology Training LLC ("Workforce Training Illinois").

56.     It was further part of the conspiracy that, on or about November 16, 2021, PATEL again falsely certified to the Illinois SAA that New Horizons Illinois and Workforce Training Illinois were not engaged in any commission-based veteran recruitment.

57.     It was further part of the conspiracy that, on or about January 6, 2022, Kotecha established Reskill and conducted business through this entity. Based on the recruiting he had previously done and the estimated number of veterans to be recruited going forward, SLATER and Kotecha agreed that Workforce Training Illinois would pay Kotecha $85,000 a month.

58.     Because Workforce Training Illinois saw a large jump in veteran enrollment, it was required to have non-veteran paying students enrolled in the instructional programs to comply with the 85/15 rule. It was further part of the conspiracy that, to allow Workforce Training Illinois to enroll more veteran students and obtain more Post-9/11 GI Bill tuition benefits, PATEL and SLATER falsified documentation of enrollments to show fake students in Workforce Training Illinois classes. PATEL and SLATER created these fake students to mislead the VA and its representatives into believing that the required minimum was met of 15% non-veteran paying students.

59.     It was further part of the conspiracy that, in or about January and February 2022, PATEL represented to the Illinois SAA that their new organization, Workforce Training Illinois, had terminated its relationship with Kotecha. The Illinois SAA approved Workforce Training Illinois to receive Post-9/11 GI Bill tuition benefits on or about April 6, 2022.

60.     It was further part of the conspiracy that payments of tuition benefits from the VA to New Horizons Illinois and Workforce Training Illinois were made through interstate wire transfers. New Horizons Illinois and Workforce Training Illinois would regularly utilize interstate wire transfers to make payments for Kotecha's services.

61.     After investigators conducted a search warrant on Kotecha's home on or about January 19, 2023, Kotecha stopped doing business with SLATER, PATEL, and Workforce Training Illinois.

### III. Kotecha, BATHULA, and Global Institute of Technology Services

62.     On or about April 21, 2014, in the process of getting approved for Post-9/11 GI Bill tuition benefits, BATHULA, on behalf of Global Institute of Technology Services, committed to the Virginia SAA that Global Institute of Technology Services did not engage in commission-based recruiting.

63.     It was part of the conspiracy that, starting in or about August 2019, after Global Institute of Technology Services received re-approval for Post-9/11 GI Bill tuition benefits, BATHULA contacted Kotecha to discuss retaining him to generate enrollments. Kotecha responded that approval for VA tuition benefits would mean millions of dollars in additional revenues for Global Institute of Technology Services.

64.     It was further part of the conspiracy that, on or about January 6, 2020, BATHULA contacted an employee of Kotecha to ask how their commission-based recruitment was lawful, given VA regulations that prohibit it. Kotecha stated to BATHULA that because he called what he was paid a "Premium Lead" it was allowed by the VA.

65.     It was further part of the conspiracy that, on or about June 30, 2020, BATHULA, on behalf of Global Institute of Technology Services, signed a contract to retain Established Investments, Inc. and Kotecha to provide "Premium Leads" in exchange for 25% of the tuition benefits received.

66. It was further part of the conspiracy that, after signing this agreement, Global Institute of Technology Services dramatically increased its enrollments of veterans:

| Year | Total Enrolled Veterans | Total VA Benefits Received |
|------|------------------------|----------------------------|
| 2018 | 0 | $0 |
| 2019 | 0 | $0 |
| 2020 | 70 | $806,792.07 |
| 2021 | 171 | $2,181,755.56 |

67. Because Global Institute of Technology Services saw a large jump in veteran enrollment, it was required to have non-veteran paying students enrolled in the instructional programs to comply with the 85/15 rule. It was further part of the conspiracy that, to allow Global Institute of Technology Services to enroll more veteran students and obtain more Post-9/11 GI Bill tuition benefits, BATHULA falsified documentation of enrollments to show fake students in Global Institute of Technology Services classes. BATHULA created these fake students to mislead the VA and its representatives into believing that the required minimum was met of 15% non-veteran paying students.

68. It was further part of the conspiracy that, BATHULA re-certified to the Virginia SAA that Global Institute of Technology Services was not targeting veterans for financial gain and was complying with all laws and regulations.

69. It was further part of the conspiracy that, in or about January 2022, during a compliance visit, the Virginia SAA learned from veteran students at Global

Institute of Technology Services that they were being recruited by Kotecha.
BATHULA then backdated a contract cancelation letter to misrepresent to the SAA
the nature of his termination of Global Institute of Technology Services relationship
with KOTECHA.

70.    It was further part of the conspiracy that payments of Post-9/11 GI Bill
tuition benefits from the VA to Global Institute of Technology Services were made
through interstate wire transfers. Global Institute of Technology Services would
regularly utilize interstate wire transfers to make payments for Kotecha's services.

71.    On or about April 30, 2022, the Virginia SAA withdrew Global
Institute of Technology Services from the Post-9/11 GI Bill program, disqualifying it
from receiving Post-9/11 GI Bill tuition benefits.

**IV.    Kotecha, SAYED, and ABCO Technology**

72.    It was further part of the conspiracy that, on or about May 13, 2019,
SAYED, on behalf of ABCO Technology, hired Established Investments, Inc. and
Kotecha to engage in online advertising targeting veterans. ABCO Technology paid
Kotecha a monthly retainer for this service.

73.    It was further part of the conspiracy that, in or about March 2020,
Kotecha emailed SAYED describing the commission-based recruiting services he
could offer. Kotecha attached to this email a contract for such services stating that
Kotecha would receive 40% of the tuition received.

74.    It was further part of the conspiracy that, in or about June 2020,
Kotecha and SAYED engaged in a discussion about the price per enrolled veteran

that ABCO Technology would pay Kotecha for commission-based veteran recruiting.

75.    It was further part of the conspiracy that, in or about May 2021, an ABCO Technology employee emailed Kotecha a breakdown of the oral agreement that SAYED and Kotecha made on the phone in or about April 2021. The oral agreement established that ABCO Technology would pay Kotecha and Established Investments, Inc. certain amounts per enrolled veteran after the veteran completed a certain number of days of enrollment.

76.    It was further part of the conspiracy that, in or about June 2021, Kotecha started issuing invoices to ABCO Technology that were different than previous monthly retainer invoices for $3,000 or $3,500. For example, in or about June 2021, Kotecha issued an invoice for $16,500 to ABCO Technology that identified the specific recruited veterans, and the specific commission paid per veteran.

77.    It was further part of the conspiracy that, over the course of their ensuing business together, Kotecha's commission-based recruiting resulted in ABCO Technology obtaining substantial Post-911 GI-Bill tuition benefits:

| Year | Total Enrolled Veterans Through Per-Student Fee Structure | Total VA Benefits Received |
|---|---|---|
| 2021-2022 | 164 | $2,011,658.87 |

78.    It was further part of the conspiracy that payments of tuition benefits from the VA to ABCO Technology were made through interstate wire transfers.

ABCO Technology regularly utilized interstate wire transfers to make payments for Kotecha's services.

79.    It was further part of the conspiracy that the arrangement between Kotecha, SAYED, and ABCO Technology continued through at least April 2022.

80.    It was further part of the conspiracy that members of the conspiracy would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purpose of the scheme to defraud and the acts committed in furtherance thereof.

All in violation of 18 U.S.C. § 1349.

## COUNTS TWO THROUGH ELEVEN
### (Wire Fraud)

### A. Introduction

The allegations contained in paragraphs one through twenty of Count One of this Indictment are hereby realleged and incorporated herein by reference.

### B. The Scheme and Artifice

Beginning on or about June 4, 2019, and continuing thereafter through on or about January 19, 2023, in the Middle District of Florida, and elsewhere, the defendants,

ZACHARY SOMERS HISCOCK,
TIMOTHY SLATER,
NIKHIL PATEL,
GANGADHAR BATHULA,
and
ARIF HASSAN SAYED,

together with Kyle Blake Kotecha, and others known and unknown to the Grand Jury, did knowingly and with intent to defraud, devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises.

### C. <u>Manner and Means of the Scheme and Artifice</u>

The substance of the scheme and artifice and its manner and means are described in paragraphs twenty-two through eighty of Count One of this Indictment, the allegations of which are hereby realleged and incorporated herein by reference.

### D. <u>Executions of the Scheme and Artifice by HISCOCK</u>

On or about the dates set forth below, in the Middle District of Florida, and elsewhere, the defendant,

ZACHARY SOMERS HISCOCK,

for the purpose of executing the aforesaid scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly, and with intent to defraud, transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, the following writings, signs, signals, pictures, and sounds:

22

| Count | Date | Interstate Wire |
|-------|------|-----------------|
| **Two** | August 31, 2020 | $9,000 payment from HISCOCK and New Horizons Phoenix via interstate wire to Wells Fargo Account ending in 9734 for Kotecha invoice 10076 for prohibited commission-based recruitment. |
| **Three** | February 24, 2021 | $12,000 payment from HISCOCK and New Horizons Phoenix via interstate wire to Wells Fargo Account ending in 9734 for Kotecha invoice 100290 for prohibited commission-based recruitment. |

### E. Executions of the Scheme and Artifice by SLATER and PATEL

On or about the dates set forth below, in the Middle District of Florida, and elsewhere, the defendants,

TIMOTHY SLATER
and
NIKHIL PATEL,

for the purpose of executing the aforesaid scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly, and with intent to defraud, transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, the following writings, signs, signals, pictures, and sounds:

| Count | Date | Interstate Wire |
|-------|------|-----------------|
| Four | April 21, 2021 | $47,250 payment from SLATER, PATEL, and New Horizons St. Louis via interstate wire to Wells Fargo Account ending in 9734 for Kotecha invoice 100-319 for prohibited commission-based recruitment. |
| Five | August 30, 2021 | $78,750 payment from SLATER, PATEL, and New Horizons St. Louis via interstate wire to Wells Fargo Account ending in 9734 for Kotecha invoice 10-337-30 for prohibited commission-based recruitment. |
| Six | February 14, 2022 | $85,000 payment from SLATER, PATEL, and Workforce Training Illinois via interstate wire to Bank of America Account ending in 4353 for Kotecha invoice 1001 for prohibited commission-based recruitment. |
| Seven | February 14, 2022 | $85,000 payment from SLATER, PATEL, and Workforce Training Illinois via interstate wire to Bank of America Account ending in 4353 for Kotecha invoice 1002 for prohibited commission-based recruitment. |

**F. Executions of the Scheme and Artifice by BATHULA**

On or about the dates set forth below, in the Middle District of Florida, and elsewhere, the defendant,

GANGADHAR BATHULA,

for the purpose of executing the aforesaid scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly, and with intent to defraud, transmit and cause to be transmitted by means of wire, radio, and television communication

in interstate and foreign commerce, the following writings, signs, signals, pictures, and sounds:

| Count | Date | Interstate Wire |
|-------|------|-----------------|
| **Eight** | December 28, 2020 | $5,450 payment from BATHULA and Global Institute of Technology Services via interstate wire to Wells Fargo Account ending in 9734 for Kotecha invoice 100-255 for prohibited commission-based recruitment. |
| **Nine** | November 17, 2021 | $17,165 payment from BATHULA and Global Institute of Technology Services via interstate wire to Wells Fargo Account ending in 9734 for Kotecha invoice 10-337-90 through 10-337-97 for prohibited commission-based recruitment. |

### G. Executions of the Scheme and Artifice by SAYED

On or about the dates set forth below, in the Middle District of Florida, and elsewhere, the defendant,

ARIF HASAN SAYED,

for the purpose of executing the aforesaid scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly, and with intent to defraud, transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, the following writings, signs, signals, pictures, and sounds:

25

| Count | Date | Interstate Wire |
|-------|------|-----------------|
| **Ten** | October 1, 2021 | $36,540 payment from SAYED and ABCO Technology via interstate wire to Wells Fargo Account ending in 9734 for Kotecha invoice 10-337-67 for prohibited commission-based recruitment. |
| **Eleven** | October 18, 2021 | $24,000 payment from SAYED and ABCO Technology via interstate wire to Wells Fargo Account ending in 9734 for Kotecha invoice 10-337-68 for prohibited commission-based recruitment. |

All in violation of 18 U.S.C. § 1343.

## FORFEITURE

1.      The allegations contained in Counts One through Eleven are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2.      Upon conviction of a violation of 18 U.S.C. § 1349 and/or 1343, the defendants shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as a result of such violation.

3.      The property to be forfeited includes, but is not limited to, an order of forfeiture in the amount of $19,232,390, which represents the proceeds the defendants obtained from the conspiracy.

4.      If any of the property described above, as a result of any act or omission of the defendants:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third party;

      c.      has been placed beyond the jurisdiction of the Court;

      d.      has been substantially diminished in value; or

      a.      has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

A TRUE BILL,

Foreperson

GREGORY W. KEHOE
United States Attorney

By: _____
Noah P. Dorman
Assistant United States Attorney

By: _____
Dana E. Hill
Assistant United States Attorney

By: _____
Chauncey A. Bratt
Assistant United States Attorney
Deputy Chief, Orlando Division

27

FORM OBD-34
July 25

## UNITED STATES DISTRICT COURT
### Middle District of Florida
### Orlando Division

## THE UNITED STATES OF AMERICA

vs.

### ZACHARY SOMERS HISCOCK
### TIMOTHY SLATER
### NIKHIL PATEL
### GANGADHAR BATHULA
### ARIF HASAN SAYED

## INDICTMENT

Violations: 18 U.S.C. § 1349
18 U.S.C. § 1343

A true bill,

_____
Foreperson

Filed in open court this 16th day of July 2025.

_____
Clerk

Bail $_____

GPO 863